```
 1                     UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF FLORIDA
 2                            MIAMI DIVISION
                        CASE NO. 18-cr-20255-CMA
 3

 4    UNITED STATES OF AMERICA,         Miami, Florida

 5              Plaintiff,              January 30, 2019

 6         vs.                          12:32 p.m. to 12:52 p.m.

 7    GUILLERMO RAVELO,                 Courtroom 12-2

 8              Defendant.              (Pages 1 to 22)

 9    _____

                          RESTITUTION HEARING
10            BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                    UNITED STATES DISTRICT JUDGE
11

12    APPEARANCES:

13    FOR THE GOVERNMENT:    HARRY C. WALLACE, JR., ESQ.
                             Assistant United States Attorney
14                           99 Northeast 4th Street
                             Miami, FL 33132
15                           (305) 961-9001
                             harry.wallace@usdoj.gov
16
      FOR THE DEFENDANT:     DOUGLAS C. HARTMAN, ESQ.
17                           C. MICHAEL CORNELY, ESQ.
                             Hartman & Cornely
18                           10680 NW 25TH St Ste 200
                             Miami, FL 33172-2101
19                           (305) 477-1184
                             dch2hc@bellsouth.net
20                           cmichaelcornely@yahoo.com

21    Also Present:          Gabriel Fernandez, USPO
                             David King, FBI
22

23

24

25
```

1    **APPEARANCES CONTINUED:**

2    **REPORTED BY:**          **STEPHANIE A. McCARN, RPR**
                                **Official Court Reporter**
3                               **400 North Miami Avenue**
                                **Twelfth Floor**
4                               **Miami, Florida 33128**
                                **(305) 523-5518**
5                               **Stephanie_McCarn@flsd.uscourts.gov**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          I N D E X

 2                          WITNESSES


 3      WITNESSES FOR THE GOVERNMENT:                    Page

 4      Jonathan Pereira
 5          Direct Examination by Mr. Wallace            5
            Cross-Examination by Mr. Hartman            11
 6          Redirect Examination by Mr. Wallace         15



 7


 8
        WITNESSES FOR THE DEFENDANT:                     Page
 9                                                       --


10


11      EXHIBITS IN EVIDENCE          PRE    MARKED    ADMITTED

12
        Government's Exhibit No. 1            6          7
13      Government's Exhibit No. 2            6          9
        Government's Exhibit No. 3            6          10

14

15

16

17

18

19                          MISCELLANEOUS

20                                                       Page
        Proceedings.......................................    4
21      Court Reporter's Certificate...................     22

22

23

24

25
```

Proceedings
January 30, 2019
United States of America v. Guillermo Ravelo, 18-cr-20255-CMA

1              (The following proceedings were held at 12:32 p.m.)

2              COURT SECURITY OFFICER:  All rise.

3              THE COURT:  Good afternoon.  Please be seated.

4              ALL PARTIES:  Good afternoon, Judge.

5              THE COURT:  Please state your appearances.

6              MR. WALLACE:  Good afternoon, Your Honor.  Harry

7    Wallace with FBI Agent David King on behalf of the United

8    States.

9              MR. HARTMAN:  Good afternoon, Judge.  Douglas Hartman

10   and Michael Cornely on behalf of Guillermo Ravelo who is before

11   the Court.

12             THE COURT:  And from Probation?

13             PROBATION OFFICER:  Good afternoon, Gabriel Fernandez

14   on behalf of Probation.

15             THE COURT:  I will hear from the Government.

16             MR. WALLACE:  Yes, Your Honor.  I have sent to Defense

17   Counsel receipts from the victim Jonathan Pereira, totalling, I

18   believe, $9,453.10.  At least one of the receipts implies or

19   indicates that it is not -- that his payment is not complete;

20   so I would like to either call up to the podium or to the stand

21   so that he can testify about exactly what he has paid.

22             THE COURT:  Very well.

23             MR. WALLACE:  All right.  Judge, at this time, I will

24   call Jonathan Pereira.  Where would you like him, Judge, at the

25   podium or at the stand?

```
 1              THE COURT:  Please raise your right hand.

 2                      (Time 12:33 p.m.)

 3                      JONATHAN PEREIRA,

 4   a witness for Government testified as follows:

 5              THE WITNESS:  Yes.

 6              THE COURT:  Please be seated.

 7                      DIRECT EXAMINATION

 8   BY MR. WALLACE:

 9   Q.  Please state your name and spell your last name.

10   A.  Jonathan Pereira, P-E-R-E-I-R-A.

11              MR. WALLACE:  Okay.  May I approach, Your Honor?

12              THE COURT:  You may.

13          (Pause in proceedings.)

14   BY MR. WALLACE:

15   Q.  Mr. Pereira, are you the JP that was arrested on April 7th

16   in Biscayne Park, Florida, by the Defendant, Guillermo Ravelo?

17   A.  Yes.

18   Q.  And that's the case for which he was indicted for, and you

19   came and you testified at the sentencing hearing, correct?

20   A.  Yes.

21   Q.  Okay.  Can you speak a little louder and pull the

22   microphone down?

23   A.  Yes.

24   Q.  All right.  Now, I have given you Government's Exhibits 1,

25   2 and 3.
```

Direct Examination - Jonathan Pereira

January 30, 2019
United States of America v. Guillermo Ravelo, 18-cr-20255-CMA

1          (Government's Exhibit Nos. 1, 2 and 3 were marked for

2           identification.)

3      BY MR. WALLACE:

4      Q.   Can you take a look at those?  Let's start with

5      Government's Exhibit No. 1.

6      A.   Okay.

7      Q.   Now, that one, do you recognize that exhibit?

8      A.   Yes.

9      Q.   Where did this statement come from?

10     A.   This was the amount that I had to pay for my lawyer.

11     Q.   But where did you get this statement?  How'd you get this?

12     Did your lawyer give it to you?  Did he mail it to you?  How --

13     A.   Yes, that's -- my lawyer gave it to me.

14     Q.   Do you understand or do you remember approximately when?

15     Is it the date that's on it?  Upper-right hand corner, there is

16     a date.

17     A.   I don't remember exactly when he gave it to me, but I want

18     to say towards the end of my payments.

19     Q.   Okay.  Now, this indicates that you made five payments.

20     April 29th, May 29th, June 28th, July 26th, and August 29th of

21     2013, all in the amount of $500.  Do you see that?

22     A.   Yes.

23     Q.   Okay.  Now, did you complete your payments, because this

24     also indicates -- well, let me ask you, if you look at the

25     upper-right hand corner, what was the retainer amount that you

1    were supposed to pay?

2    A.  7,500.

3    Q.  Okay.  Did you pay the entire 7,500?

4    A.  Yes.

5    Q.  Okay.  And have you been able to get a statement so far

6    from your attorney?

7    A.  No, I -- I was told about this, I want to say, like, a day

8    ago, so I gave -- I gave the receipts, but if I needed to go

9    back and call my lawyer, I am pretty sure I can just -- he can

10   give me an updated receipt of everything that I paid.

11   Q.  But this is an accurate statement of what you were owed.

12   You are saying that amount is accurate, correct, $7,500 and

13   that you paid it?

14   A.  Yes.

15        MR. WALLACE:  Okay.  Your Honor, at this time, the

16   Government would move for the admission of Government's Exhibit

17   No. 1.

18        MR. HARTMAN:  Judge, I just want to cross-examine him

19   on the issue.

20        THE COURT:  Admitted.

21     (Government's Exhibit No. 1 was admitted into evidence.)

22   BY MR. WALLACE:

23   Q.  Now, let's move to Government's Exhibit No. 2, that's the

24   one with the name Jeff Whitman --

25   A.  Yes.

1   Q.   -- on it; is that correct?

2   A.   Yes.

3   Q.   Okay.  Now, this is -- do you recognize this exhibit?

4   A.   Yes.

5   Q.   Did you send this exhibit to the agents in this case, Agent

6   Dave King and another Agent Ronny Bobbett (phonetic)?

7   A.   Yes.

8   Q.   Okay.  And what does this show us?  It's -- I see a 1700

9   amount, and then I see $5.68.  Please tell us what that is?

10  A.   So that -- I withdrew that to pay my bailsman when I got

11  out of jail.

12  Q.   You mean your bail bondsman?

13  A.   Yes.

14  Q.   Okay.  And when you said you paid someone when you got out

15  of jail, is this how you got out of jail?

16  A.   Yes.

17  Q.   And is this related to your April 7th arrest?

18  A.   Correct.

19  Q.   And also the $7500 that you paid to your lawyer, was that

20  related to the April 7th arrest as well?

21  A.   Yes.

22  Q.   And so the $1700, you got it out in cash?

23  A.   Yes.

24  Q.   And did you give it to your bail bondsman in the same form?

25  A.   Yes.

Case 1:18-cr-20255-CMA   Document 70   Entered on FLSD Docket 11/07/2019   Page 9 of 22
9
Direct Examination of Jonathan Pereira
January 30, 2019
United States of America v. Guillermo Ravelo, 18-cr-20255-CMA

1          MR. WALLACE:  Your Honor, at this time, the Government

2    moves for the admission of Government's Exhibit No. 2.

3          MR. HARTMAN:  No objection, Judge.

4          THE COURT:  Admitted.

5      (Government's Exhibit No. 2 was admitted into evidence.)

6    BY MR. WALLACE:

7    Q.  And, finally, let's take a look at Government's Exhibit

8    No. 3.  Did you also submit this to the agents at their

9    request?

10   A.  Yes.

11   Q.  The FBI agents?

12   A.  Yes, I did.

13   Q.  And where did you get this from?

14   A.  This is from Westbrook Towing Company.

15   Q.  And what was your experience with them?  Why are you paying

16   them?

17   A.  Because that night that my car got towed and they took it.

18   Q.  You are talking about the night of April 7th?

19   A.  Yes.

20   Q.  As a result of your arrest, was your car towed?

21   A.  Yes.

22   Q.  And this is the receipt, how much you had to pay to get it

23   out?

24   A.  Yes.

25   Q.  Did you pay this amount to Westbrook Towing?

Direct Examination - Jonathan Pereira
January 30, 2019
United States of America v. Guillermo Ravelo, 18-cr-20255-CMA

10

1   A.   Yes.

2   Q.   And let me be clear, you paid $7500 to your lawyer; is that

3   correct?

4   A.   Yes.

5   Q.   $1700 to your bail bondsman?

6   A.   Yes.

7   Q.   And $2,500 -- I'm sorry, $253.10 to Westbrook Towing to get

8   your car back?

9   A.   Correct.

10  Q.   And all three of these bills are related to your arrest on

11  April 7th?

12  A.   Correct.

13          MR. WALLACE:   Your Honor, I would move for the

14  admission of Government's Exhibit No. 3.

15          MR. HARTMAN:   No objection, Judge.

16          THE COURT:   Admitted.

17      (Government's Exhibit No. 3 was admitted into evidence.)

18  BY MR. WALLACE:

19  Q.   Okay.   And it is your statement here under oath that you

20  have paid all of these amounts in full?

21  A.   Correct, yes.

22  Q.   Okay.   Have you been reimbursement by the Government in any

23  way for any of this?

24  A.   No.

25  Q.   Okay.   Any reimbursement from the Defendant concerning any

1    of this?

2    A.  No.

3    Q.  Thank you.

4         MR. WALLACE:  No further questions, Your Honor.

5                    CROSS-EXAMINATION

6    BY MR. HARTMAN:

7    Q.  Good afternoon, Mr. Pereira.

8    A.  Hey there.

9    Q.  Let me ask you, with regard to Exhibit 1, okay, which says

10   the $7500 to your lawyer, okay?  How did you pay and when did

11   you pay the other, I guess, ten payments?

12   A.  I was paying in increments of $500 every week.

13   Q.  Every week or every month?

14   A.  Every month, I guess, yeah.

15   Q.  Okay.  How did you pay -- let's go to the next month which

16   would have been -- the last one here is August 29th.  How did

17   you pay September's payment?

18   A.  Same way, with cash.

19   Q.  Okay.  Well, did you withdraw it from your account somehow?

20   A.  I think at the time I was doing valet; so I think that they

21   didn't put in the bank.

22   Q.  Okay.  What proof do you have that you paid him?

23   A.  I would have to call him and, like, give you, like, a

24   better -- because this is the only, like, paper that I had at

25   the time.

1    Q.  Um-hmm.

2    A.  So --

3    Q.  All right.

4    A.  But I'm pretty sure he has all of my receipts.

5    Q.  Okay.  But what do you have to prove to the Court that you

6    paid the other $5,000?

7            MR. WALLACE:  Objection as to form of the question,

8    Judge.

9            THE COURT:  Overruled.

10           THE WITNESS:  I mean, personally, right now, I don't

11   have.

12   BY MR. HARTMAN:

13   Q.  All right.  You -- did you deal with FBI Agent King with

14   regard to these receipts?

15   A.  I did, yes.

16   Q.  Okay.  Did they ask you to bring proof of that $5,000 to

17   court today?

18   A.  They -- they told me that there was, like, an -- an issue

19   about it.

20   Q.  Um-hmm.

21   A.  But by the time that I was aware of it, it was already kind

22   of today.

23   Q.  Okay.

24   A.  So.

25   Q.  Did you call Mr. Fisher?

1   A.   I actually called Mr. Whitman, because that was the issue.

2   Q.   Who is Mr. Whitman?

3   A.   My bailsman.

4   Q.   Okay.  But he's not your lawyer, is he?

5   A.   No, no.

6   Q.   Okay.

7   A.   He is not.

8   Q.   Did you contact the law firm of Fisher, Bootman & Rosenberg

9   and ask them for a statement --

10  A.   I did not.

11  Q.   -- or a receipt of your payment?

12  A.   I did not.

13  Q.   All right.  And how about you said you called -- let's go

14  to Exhibit 2.  You called Mr. Whitman?

15  A.   Yes.

16  Q.   Okay.  Did you ask him for a receipt showing that you had

17  paid him the $1700?

18  A.   I did.  He said he was going to look into it, that he

19  doesn't -- he doesn't know if he has the receipts for after all

20  these years.

21  Q.   You paid him in cash?

22  A.   Correct.

23  Q.   What was the amount of your bond?

24  A.   1700.

25  Q.   That was your total bond?

1    A.   From what I remember, yeah.

2    Q.   Okay.  All right.  And a third one is the tow sheet for

3    your car, Exhibit 3.

4    A.   Okay.

5    Q.   Okay.  And how did you pay that?

6    A.   In cash.

7    Q.   Okay.  Did you get a receipt from towing and storage?

8    A.   I think --

9    Q.   Actually, it's tow -- it's called Westbrook Motors, I'm

10   sorry, Westbrook Motors.  Did you get a receipt from Westbrook

11   Motors saying you paid it?

12   A.   I -- I might have one.

13   Q.   Well, did you present it to the FBI to bring today?

14   A.   No, no, I didn't present it to them, no.

15   Q.   What proof do you have that you paid the $253.10?

16   A.   Well, I had -- I had the car.

17   Q.   Okay, do you still have the car?

18   A.   Well, it was my girlfriend's car at the time.

19   Q.   Okay.  All right.  Again, and you paid that in cash?

20   A.   Yes.

21   Q.   Did they give you a receipt for the 1700?

22   A.   I would have to look into my files.

23          MR. HARTMAN:  All right.  That's all I have, Judge.

24

25

Case 1:18-cr-20255-CMA   Document 70   Entered on FLSD Docket 11/07/2019   Page 15 of 22
Redirect Examination of Jonathan Pereira
January 30, 2019                                        15
United States of America v. Guillermo Ravelo, 18-cr-20255-CMA

1                    **REDIRECT EXAMINATION**

2    BY MR. WALLACE:

3    Q.  Let me make sure I understand, all of the payments made to

4    your lawyer were in cash in increments of $500?

5    A.  Correct.

6    Q.  Is that what your testimony was on cross-examination?

7    A.  Yes.

8    Q.  And you mentioned that you called Whitman because you

9    thought that was the issue.  What did you mean by that?

10   A.  Well, because someone told me that they had an issue with

11   the receipts that had I gave them, and I thought out of all of

12   them, I thought it was the Whitman one.

13   Q.  Okay.

14   A.  So I called him this morning, actually, and he told me that

15   he was going to look into it and give me a call back.

16   Q.  Okay.  And has he called you back today?

17   A.  No, he hasn't called me back.

18   Q.  All right.  And so they didn't specify, when you were

19   contacted by the FBI or by the agents in the case, they didn't

20   specify which particular receipt there was an issue with or if

21   there was more than one receipt that there was an issue with?

22   A.  I probably misinterpreted which receipt they were talking

23   about.

24   Q.  Okay.

25   A.  Because they did tell me that there was -- that the

1   Defendant's lawyer had an issue with one of the receipts.

2   Q.  Okay.  All right.

3           MR. WALLACE:  No further questions, Your Honor.

4           THE COURT:  All right.  Thank you.  You may step down.

5       (Witness excused.)

6           MR. HARTMAN:  Judge, did you want to hear --

7           MR. WALLACE:  How would you like to proceed, Judge?

8           THE COURT:  I am just waiting for you all to --

9           MR. WALLACE:  Okay.  Judge, I think that --

10          THE COURT:  -- present anything additional.

11          MR. WALLACE:  I have no additional evidence to present

12  at this time, Judge.  So if you would like, I have a brief

13  argument and that is that the Defendant has presented some

14  evidence of his payments in this regard.  He doesn't have

15  perfect records.

16          THE COURT:  You mean the victim?

17          MR. WALLACE:  I'm sorry, the victim.  He doesn't have

18  perfect records, but he has also testified under oath under

19  penalty of perjury that he made these payments.  And while

20  Defense Counsel may have asked him, Do you have any proof?  I

21  think that his testimony can be that proof that he made those

22  payments.

23          THE COURT:  So the total amount in restitution you are

24  seeking is how much?

25          MR. WALLACE:  9,000 -- I believe it's $9,453.10.

1        THE COURT:  All right.  Thank you.

2        MR. WALLACE:  Okay.

3        MR. HARTMAN:  All right, Your Honor, the only problem

4   that we really have is with regard to the lawyer.  I think as

5   the Court well knows, any lawyer that keeps good records if he

6   got paid, it would be there.  It would be easily attainable.

7   But my --

8        THE COURT:  Easy attainable by both sides though,

9   right?

10        MR. HARTMAN:  No, Judge, I got this yesterday at

11   4 o'clock or 5 o'clock in the afternoon.

12        THE COURT:  So do you want to reset it and we can --

13        MR. HARTMAN:  No, Judge --

14        THE COURT:  -- have you all call the lawyer and have

15   the lawyer look up his or her records?

16        MR. HARTMAN:  Well, Judge, I would -- I would do that,

17   with all due respect, but my client is here pursuant to either

18   the Government's order or the Court's order that's keeping him

19   from being classified being -- to serve his sentence.

20        THE COURT:  So do you want to waive his presence for

21   the restitution hearing?  If you want to have more certainty

22   about the lawyer who has records of payments received and must

23   keep those records, we'll call the lawyer.

24        And, Mr. Wallace, if you can contact the attorney and

25   let us know when you are ready to have the attorney either

1    testify or give us his records showing receipt of these cash

2    payments.

3            MR. HARTMAN:  Judge, would the Court allow my client

4    to be excused?

5            THE COURT:  It's up to your client.

6            MR. HARTMAN:  Okay.  Judge, I don't -- I think he

7    wants to get going.  That's his only request to me.  Would the

8    Court like to hear him under oath, or can he just -- can I

9    waive it for him?

10           THE COURT:  Oh, no, he would need to waive under oath.

11           MR. HARTMAN:  I'm sorry?

12           THE COURT:  He would need to waive his right to be

13   here under oath.

14           MR. HARTMAN:  Okay.

15           THE COURT:  All right?

16           MR. HARTMAN:  Can I just ask him a question?

17           THE COURT:  Of course.

18       (Pause in proceedings.)

19           MR. HARTMAN:  Okay.  Judge, he is willing to do that.

20           THE COURT:  All right.

21           MR. HARTMAN:  Would the Court like to inquire?

22           THE COURT:  Mr. Ravelo, please, raise your right hand.

23       (The Defendant was sworn.)

24           THE DEFENDANT:  I do.

25           THE COURT:  Please be seated.

1    Mr. Ravelo, you have the right to be here at your

2    restitution hearing.  As you can see, we are going to continue

3    it and not resolve the matter today.  Your attorney has

4    indicated that you would like to be allowed to move on to your

5    designated facility and not remain at FDC.  What is it that you

6    would like to do?

7    THE DEFENDANT:  I would like to continue on in my

8    journey.  I would like to move on.

9    THE COURT:  Are you waiving your right to be here at

10   your restitution hearing as it continues and is reset to a

11   future date?

12   THE DEFENDANT:  Yes, ma'am.

13   THE COURT:  Is anyone pressuring you or forcing you to

14   make that selection?

15   THE DEFENDANT:  No, Your Honor.

16   THE COURT:  Okay.

17   So, Mr. Wallace, do you think by Friday you can get in

18   touch with this lawyer and have these records for Defense

19   Counsel?  For Mr. Hartman and --

20   MR. WALLACE:  Yes, Judge, I will definitely try by

21   Friday.  I don't know how responsive he will be.

22   Let me ask the Court, however, perhaps, as a matter of

23   convenience to him and to the Court as well.  If he submits the

24   records, can we submit that to the Court and to Defense Counsel

25   rather than having another hearing, if that would be sufficient

```
 1    if I get those records and are able to convince -- or send them

 2    to Defense Counsel?

 3              THE COURT:  You are all able to tell me that you've

 4    resolved the restitution matter.  Just contact chambers and

 5    we'll take it off calendar and enter an amended judgment with

 6    the -- reflecting the amount agreed to.

 7              MR. HARTMAN:  Judge, I don't have any problem with

 8    that as long as the lawyer says or sends something or contacts

 9    us and says, yes, I received all of the fee.

10              THE COURT:  All right.

11              MR. HARTMAN:  And I would think he would have a

12    breakdown, Judge, I think by trust account ledgers you have to

13    have that.

14              THE COURT:  Right.

15              MR. HARTMAN:  If he shows us some proof that he paid

16    him, that's the only issue.

17              THE COURT:  Which is the lawyer in the firm?

18              MR. HARTMAN:  Judge, it looks like Joshua L. Fisher.

19              MR. WALLACE:  He's correct.

20              MR. HARTMAN:  Is the lawyer who represented him,

21    according to the payment sheet.

22              THE COURT:  Joshua Fisher?

23              MR. HARTMAN:  Yes.

24              THE COURT:  All right.  So do you want me to reset it

25    for Friday, or do you want more time than that, Mr. Wallace?
```

Proceedings
January 30, 2019
United States of America v. Guillermo Ravelo, 18-cr-20255-CMA

```
 1   You tell me.
 2           MR. WALLACE:  If we could set it for Monday instead
 3   or.
 4           THE COURT:  All right.  So how is Monday at 4:00 p.m.?
 5           MR. WALLACE:  Fine, Judge.
 6           THE COURT:  Mr. Hartman?
 7           MR. HARTMAN:  Judge, what's the date of that?
 8           THE COURT:  Monday, February the 4th.
 9           MR. WALLACE:  4th.
10           THE COURT:  At 4:00 p.m.  Does that work for everyone?
11           MR. HARTMAN:  Yes, Judge.
12           THE COURT:  Okay.  Very good.
13           MR. HARTMAN:  Perfect.
14           THE COURT:  Thank you.
15           MR. HARTMAN:  Thank you, Judge.
16           MR. WALLACE:  Thank you, Judge.
17           MR. HARTMAN:  Judge, may I just address one issue?
18           THE COURT:  Of course.
19           MR. HARTMAN:  I don't -- I don't know what's keeping
20   him here, because I have read the orders, and I don't think
21   it's the Court.  I don't know whether it's the Government or
22   not.  Can somebody withdraw that order that mandates him to be
23   here for the hearing?
24           THE COURT:  I don't believe I entered the general
25   order.
```

1          MR. HARTMAN:  Mr. Wallace?

2          MR. WALLACE:  I haven't done anything.

3          MR. HARTMAN:  Well, your order seemed to say if the

4   Government wants to keep him, they have to file something.

5          MR. WALLACE:  I have not filed anything.  I have not

6   asked anybody to keep him here.  I have done nothing.

7          MR. HARTMAN:  Would the marshals be -- make sure that

8   they are aware of that, Judge?  Or that the --

9          THE COURT:  Hold on.  I am double-checking.

10          My courtroom deputy says she is going to contact the

11   marshal and that we did not enter any order keeping the

12   Defendant here; so we will follow through with the marshal.

13          MR. CORNELY:  Thank you, Judge.

14          MR. WALLACE:  Thank you.

15          THE COURT:  Very good.  Thank you.

16          (The proceedings adjourned at 12:52 p.m.)

                     C E R T I F I C A T E

17

18          I hereby certify that the foregoing is an

19   accurate transcription of the proceedings in the

20   above-entitled matter.

21

22

    _02/03/19__                 _Stephanie A. McCarn_____
23       DATE                    STEPHANIE A. McCARN, RPR
                                 Official United States Court Reporter
24                               400 North Miami Avenue, Twelfth Floor
                                 Miami, Florida 33128
25                               (305) 523-5518